

RECEIVED
MAR 26 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| Sean Krier, Plaintiff, <br><br> Vs. <br><br> State of Iowa, Captain Gosnel, Warden Randy Gibbs, Unknown Correctional Officer, Rebecca Bowker; Robin Bagby, Defendants. | Docket No. 4:21-cv-00063-SMR-CFB <br><br> Complaint Pursuant To And Under The Civil Rights Act, 42 U.S.C. §1983 |
|---|---|

**I.  Previous Lawsuits:**

A) Have you begun other lawsuits is state or federal court dealing with the <u>same facts</u> involved in this action or otherwise relating to your imprisonment?

**Answer:** No.

**II.  Place of confinement:**

**Answer:** Iowa State Penitentiary, P.O. Box 316, Ft. Madison, IA 52627

A) Is there a prisoner's Grievance procedure in this institution?

**Answer:** Yes

B) Did you present the facts relating to your complaint in the state prisoner Grievance procedure?

**Answer:** Yes

C) If your answer is Yes,

1.) What steps did you take?
From January 17th, 2020 when I arrived at Iowa State Penitentiary, I had attempted numerous informal resolution attempts by communicating both verbally

and in writing to staff administration and supervisors of the ongoing threats of physical harm to my safety made by staff from filing past complaints against them regarding several different aspects of daily interaction with them. This includes the excessive force used against me, and the fact that correctional prison staff were not complying with PREA (Prison Rap Elimination Act) Policies and federal mandate standards. I had additionally filed multiple grievances regarding the actions of staff against me in relation to this. Upon getting an answer to these formal grievances, I had than appealed those decisions when they were denied by the grievance officer to the warden. After denial of those appeals to the warden, I had than appealed them to the Iowa Department of Corrections central office located in Des Moines, Iowa. For several of these appeals at both the warden appeal level and central office appeal level, I have never received a response. In some cases Robin Bagby answered letters addressed to her or Beth Skinner the Director of the Iowa Department of Corrections. When I inquired into the lack of an answer for the appeal I was informed they never got it, and it would now be untimely if I filed one.

**What was the result?**
At each and every attempt to resolve the issue both informally, and formally, I was denied any type of relief for the issues asserted.

**III.    Parties:**

A) **Name of Plaintiff:** Sean Edward Krier
   **Address:** Iowa State Penitentiary, P.O. Box 316, Ft. Madison, IA 52627

B) **Defendant:** Name Unknown **is employed as** a correctional officer **at** Iowa State Penitentiary, P.O. Box 316, Ft. Madison, IA 52627.
C) **Additional Defendants:**
   1) **Defendant:** Captain Gosnel **is employed as** a correctional officer Captain/Supervisor **at** Iowa State Penitentiary, P.O. Box 316, Ft. Madison, IA 52627.
D) **Additional Defendants:**
   2) **Defendant:** Randy Gibbs **is employed as** the warden **at** Iowa State Penitentiary, P.O. Box 316, Ft. Madison, IA 52627.
E) **Additional Defendants:**
   3) **Defendant:** Rebecca Bowker **is employed as** the executive officer **at** Iowa State Penitentiary, P.O. Box 316, Ft. Madison, IA 52627.
F) **Additional Defendants:**
   4) **Defendant:** Robin Bagby **is employed as** Assistant Deputy Director of the Iowa Department of Corrections **at** 510 East 12th Street, Des Moines, Iowa 50319.

**IV.    Jurisdiction:**

This complaint is brought pursuant to 42 U.S.C., §1983, and jurisdiction is based on 28 U.S.C. § 1343 (c). Plaintiff alleges that the defendant(s) acted under color of state law with regard to the facts stated in part V of this complaint.

**V.    Statement of Claim:**

I arrived at Iowa State Penitentiary (hereinafter ISP) in January of 2020. During the course of my incarceration from that time until March of 2021, the following events occurred.

Starting in the month of February, 2020, I had complained several times to supervisory correctional staff unit managers, captains, counselors, and other various administrations that staff were not properly following or totally neglecting to follow mandated policy rules and rights of offenders; specifically access to the law library as required by IDOC policy IO-OR-05 and Federal PREA mandated compliance standard 115.15 regarding cross gender viewing. These rights and or rules included law library access, sanitation matters in the living unit and showers, cold food, verbal abuse, hygiene medical related practices relating to COVID-19 safeguards not being followed, and PREA (Prison Rape Elimination Act) federal mandates being blatantly ignored, among other various other legitimate complaints. These were reported by grievance after informal resolutions with appropriate staff.

The Federal PREA Standard 115.15 reads in relevant part as follows:

"(d) The facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. ***Such policies and procedures shall require staff of the opposite gender to announce their presence when entering an inmate housing unit.***" ***(Emphasis added)***

Violations of this part of the standard and its reflecting IDOC policy were reported numerous times to Rebecca Bowker. Rebecca Bowker intentionally refused to ensure that staffs were following this procedure, even after having numerous multiple different dates and times pointed out in detail to her that said non-compliance could be verified by video camera recorded footage. Rebecca Bowker made disparaging remarks such as I should talk to a psychologist and that I was only "trying to get staff in trouble and make more work for them." I pointed out that compliance was required by law, and she failed to ensure those staff she trained in PREA compliance standards and failed in her job to ensure said standards were being followed. This resulted in me being viewed by female officers numerous times in a state of undress while I was using the toilet or changing in my cell. I additionally after having realized Rebecca Bowker would do nothing to ensure compliance, wrote to Robin Bagby at the IDOC central office, and had fully appraised her of the facts and situation at ISP. She in turn eventually insisted that Rebecca Bowker was following procedure. Evidence that this federal standard mandate was and is not being followed at ISP is self-evident by video footage which shows staff failing to use the buzzer setup on each pod/unit to announce their presence. Yet staff are "logging" the fact that they are using it, when video evidence shows they are not.

Further after having formally filed complaints and grievances relating to this matter, staff were informed I was the one complaining about them, and began harassing me and making threats. I had grieved this matter and appealed it to all people that handles appeals.

Rebecca Bowker is the PCM (PREA Coordination Manager) and is in charge of any and all PREA standards to be followed at ISP and has been aware of the situation repeatedly and has intentionally ignored it. Robin Bagby is in charge overall of the PREA procedures statewide for the Iowa Department of Corrections, and has been repeatedly made aware of the fact and has failed to correct and remedy the situations. Said failures to correct the situation has resulted in myself and countless other inmates being subjected to violations of cross gender supervision, which is a direct violation of the federal PREA act, along with staff retaliation due to my formal complaints against them.

Once I reported these matters to appropriate officials, multiple various correctional staff began harassing me in numerous ways; these included written derogatory statements which other ISP staff covered up; threats against my personal safety; staff informing inmates I was a "snitch" and "pedophile;" writing a disciplinary report resulting in my being fired from my prison job which I lost prison wages from, (which was post humorlessly overturned but never had my job given back after it was seen I only did as staff directed); and Correctional staff standing at my cell door screaming threats at me due to me filing a valid PREA complaint to administration; along with a host of other acts done by staff against my person.

I reported these incidents in both verbal communication to prison and housing supervisors, and or communicated them by internal email o said officials.

The internal email communications took place on the following dates. 2/6/20; 2/9/20; 2/11/20; 2/16/20; 2/17/20; 2/18/20; 2/19/20; 3/6/20; 3/10/20; 3/11/20; 3/14/20; 3/21/20; 3/24/20; 3/25/20; 3/26/20; 4/22/20; 6/28/20; 6/29/20; 6/30/20; 7/4/20; 7/5/20; 7/6/20; 7/7/20; 7/8/20; 7/9/20; 7/10/20; 7/11/20; 7/14/20; 7/17/20; 7/25/20; 7/28/20; 7/30/20; 8/1/20; 8/3/20; 8/11/20; 8/12/20; 9/16/20; and 12/2/20.

I had also filed grievances in regards to these matters after attempting informal resolutions, and had appealed them to the final person having authority to handle the appeal in central office.

On December 8th, 2020, staff performed a cell extraction on me when I refused a cell move. Staff had used vape fog on me, and then five (5) correctional officers entered the cell using an electronic stun shield with all five (5) wearing full body armor and helmets. Upon them entering the cell I did swing a TV at them. After the first swing of the TV, I was disarmed. A short brief wrestling match of 5v1 for lack of a better term ensued. I was taken to the ground quickly and fully restrained by five (5) officers; at this point I became compliant with all staff directives. After being restrained and compliant four (4) Staff held me immobile by restraining my arms and legs, while a fifth staff member knelt on my chest. At this time I posed no risk or threat to anyone as I was immobile and only to move my head and fully restrained by staff. At this point while fully restrained and completely immobile on the ground, the unknown correctional officer kneeling on my chest began hammer fist punching me in my face approximately 12-16 times. This resulted in massive trauma injuries to my face, nose, eye, and head area. The five (5) staff then rolled me onto my stomach, at this point the same staff member who was punching me, grabbed the back of my head and forcible slammed my head into the concrete 4-6 times resulting in further serious trauma at which time I briefly lost consciousness. At all times during

the time the unknown staff member was punching me and slamming my head I was fully restrained by staff and compliant. All these events were recorded by a correctional officer using a digital camcorder recording device. The staff member using said device is named Leslie Estrada according to information I received.

Due to the serious nature of the injuries I had sustained by this unknown staff member. I was seen by a nurse named Kristina Wynn. She immediately upon seeing me informed security I would require medical attention at the hospital. Officer Patrick McKinney came into the triage room, and took pictures using a digital camera of the extensive injuries to my face and head, which consisted of massive and extensive bruising which encompassed my entire face and forehead, a broken bloody nose, bleeding from the left eye and mouth. I was also informed by inmates that a staff member took pictures of my cell as there were copious amounts of my blood throughout the room as I was coughing/spitting up blood along with bleeding from other parts of my head extensively. These events are all recorded by digital video devices.

At this point I was transported to the local hospital in Ft. Madison, Iowa where I received treatment relating to my injuries and effects of those injuries, and had been referred for follow-up to specialist doctors in Iowa City to correct the damage done to my nose among other after effects of the injuries sustained by the officer who abused me, including but not limited to Neurology. I am currently scheduled to have numerous and multiple tests done such as MRI and EEG among others. To present date I am still receiving follow-up medical care by Iowa City medical specialist relating in part to the injuries cause by the events of December 8th, 2020.

I had done an informal resolution regarding these events and filed grievances regarding the excessive force using against me when I was compliant and fully restrained.

On or about Friday January 8th, 2021, correctional supervisor/captain Gosnel came to my cell # 110 on B-pod of housing unit one. He directed me to take down paper that I had covering my cell window, along with about 10 other staff members in full body armor, and one of them recording with a digital camcorder. I immediately complied with his directives and uncovered my window. I then asked if he wanted me to do anything else, he replied, "no." He and the officers then left. About ten (10) minutes later Gosnel returned and informed me that per psych he was placing me in SSIP (Suicide and Self-Injury Prevention). I asked who authorized this. He stated psychologist Mike Einsinger did. I asked to speak to Mike as I never stated or implied or shown any action which would constitute me harming myself or others, which is required to be placed in SSIP status. Gosnel then went made a phone call and came back and said the shift captain said I'm going into SSIP. I requested to speak to medical or psych as is my right under IDOC policy. Gosnel then opened my flap without further conversation and sprayed half a can of vape into my cell. Slamming the flap closed he left. He returned about 10-15 minutes later, and repeated the same thing without giving me a chance to cuff up. After the 2nd time I lost consciousness and passed out due to being unable to breath due to the vape fog used. Eventually they allowed me to cuff up and transported me to cell 103 in D-pod in housing unit one. This cell was unclean and had food, feces, toe nails and various other trash throughout the cell. I was denied cleaning supplies by Gosnel when I requested. I had requested medical attention but Gosnel refused to tell medical I had asked for them. They did however allow me to shower before placing me in the dirty cell.

On Monday I spoke with psychologist Mike Einsinger regarding the above events. He informed me that he did not authorize the placement of me in SSIP. He specifically informed security that if I uncovered my window and I was seen to be ok and had not harmed myself that was all that was required. I informed Mike that even the digital video of the events showed I had immediately complied and uncovered my window and shown I was ok. It is relevant to note that because of this staff did NOT write me a disciplinary report, as Gosnel's actions were uncalled for and a violation of policy, and served no purpose other than to harm me and cause me pain.

I had done an informal resolution regarding these events and filed grievances regarding the excessive force using against me when I was compliant with Gosnel and how he did not have medical authority as required to place me in SSIP status.

During the course of the grievances after these events, several staff made comments. I filed a grievance regarding the two events in one grievance.

On 2/19/21 while escorting me to the shower, Captain Weathington (who was involved in the incident of 12/8/20 where I was hospitalized) told me I should let it go, or that the next time "you will be carried out on a stretcher." (See ECF No. 1)

I had informed this Court of the threats and they ordered that the State of Iowa investigate my status. (See ECF No. 2

The State of Iowa responded and provided a letter from Warden Randy Gibbs attesting to the fact that he would continue to monitor my status and that I was placed in a dual disciplinary detention/protective custody status. (See ECF No. 3)

On 3/17/21 at about 8:00 AM officers Bruce Billings and Shane Jobe (both who were involved in the incident of 12/8/20 where I was hospitalized) refused to let me shower even though it was shower day, stating I had refused when in fact I did not. Officer Billings also did this same thing on 3/12/21. After a few hours of insisting I get my shower and being refused. I had broken a sprinkler head at about 11:25 AM, as I knew the end result would be that they would be required to give me a shower to get the chemicals off from the fire system. Officer Billings had everyone but officer Jobe leave the unit, and ordered me to strip out. I complied. Upon placing my shirt and underwear on, I placed my hands outside the port hole to be hand cuffed. Officer Billings told me to bring my hands back inside the cell. He then reached into the cell and holding the handcuffs punched me in the genitals with two quick rabbit punches. (I should point out that policy is that officers are never to place their hands into the cell and requires them to hand cuff inmates while their hands are outside of the cell). I was then escorted to the shower. Upon being placed in the shower I asked for a bar of soap and to talk to a supervisor. Billings and Jobe refused to give me soap and refused to get a supervisor. Three (3) ISP maintenance staff came onto the unit and I hollered at them from the shower to get a supervisor as a n officer had punched me in the "balls" and that I wanted to file a PREA. Upon the maintenance staff seeing I was serious, they contacted a supervisor. Captain Binda came and I explained what happened. He directed that officers give me a bar of soap, and apologized for them not having given me it before and had no idea why they did not. I requested medical attention when placed in housing unit 1, B-pod cell 107. That evening hours after the fact, when doing pill line, nurse Kerry McKandles asked me what was wrong. I advised her what had happened and that I wanted to be seen by medical. She stated she would document it. I was not seen by medical until about 3:30 PM on 3/18/21 as I repeatedly and consistently insisted on

speaking to a supervisor to file a formal complaint and a PREA as I was hit in the genitals by staff.

## VI. Relief Requested:

(1) In regards to ISP not adhering to required Federal PREA standards, I am requesting the sum of $50,000 in damages, with the money to be given to the Iowa Sexual Assault Hotline which is a 501 (c) non-profit organization that monitors situations such as PREA and PREA standards.

(2) In regards to the excessive force used against me on 12/8/20 and 1/8/21 I am asking for monetary awards for physical, emotional and punitive damages in the amount of $100,000 due to the ongoing medical issues, memory loss, and constant migraine headaches due to the assault by staff on me on 12/8/21 when I was fully restrained; in addition to the State of Iowa / ISP being required to cover all medical expenses relating to the injuries from the time of the incidents to and after my release from prison if any arise and are directly related to the injuries sustained on 12/8/20 and 1/8/21.

(3) I had previously requested a temporary injunction to this court pertaining to direct that the officers involved in the incident of 12/8/20 and Captain Gosnel on 1/8/21 have no physical/ direct or verbal contact with me until conclusion of these proceedings. This request is based upon the ongoing threats and assaults I have sustained by staff due to my reporting their actions and filing grievances.

## VII. Statement regarding Assistance in preparing this Complaint:

**A) Did any person other than a named plaintiff in this action advise you in preparing this complaint?**

**Answer:** No

## VIII. Signature of Plaintiff:

Respectfully Submitted,

*Sean Krier* (signature)

Sean Krier # 6980360
Iowa State Penitentiary
P.O. Box 316
Ft. Madison, IA 52627

State Of Iowa     }
                  } ss.
County Of Lee     }

The foregoing instrument was Subscribed and sworn to before me all on this _____ day of _____ 201_.

_____
Notary Public In and For The State of Iowa

SEAN KRIER 6983?6

**IOWA STATE PENITENTIARY**
P.O. Box 316
FT. MADISON, IA 52627

NOTICE: This correspondence was mailed from an Institution operated by the Iowa Department of Corrections. The contents are uncensored.

X-RAYED & CLEARED BY U.S.M.S.

CLERK, UNITED STATES DISTRICT COURT
U.S. COURTHOUSE
P.O. BOX 9344
DES MOINES, IA 50306-9344



U.S. POSTAGE >> PITNEY BOWES
ZIP 52627  $ 000.71
02 4W
0000372345 MAR 2021