IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| SEAN KRIER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:21-cv-00063-SMR-HCA |
| | ) | |
| v. | ) | |
| | ) | **ORDER GRANTING SUMMARY** |
| DEREK GOSNELL, WESTON | ) | **JUDGMENT IN FAVOR OF** |
| WEATHINGTON, BRUCE BILLINGS, | ) | **DEFENDANTS AND DENYING** |
| SHANE JOBE, MANNY SANDOVAL, | ) | **SUMMARY JUDGMENT TO PLAINTIFF** |
| and STEVE DILL, [1] | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Sean Krier brought this complaint without assistance of counsel under 42 U.S.C. § 1983. ECF No. 1. Upon direction of the Court, ECF No. 4, Krier filed an amended complaint. Pl.'s Am. Compl., ECF No. 7. On initial review, the Court allowed three claims of excessive force to proceed. *See* Initial Review Order 12–13, ECF No. 9. The Court later allowed Krier to amend his complaint to add the names of two defendants. Further Initial Review Order 3, ECF No. 30.

Defendants now move for summary judgment. ECF No. 54. Krier resists the motion and files a cross motion for summary judgment. ECF No. 62.[2] In his resistance, Krier concedes Defendants are entitled to summary judgment on his claim of excessive force based on the events

---

[1] The complaint and amended complaint did not have the full names and correct spellings of each defendant. *See* ECF Nos. 1, 7. The Defendants' answers provide the full names and correct spellings which the Court adopts here. *See* Defs.' Answer 1, ECF No. 17; Defs' Answer to Amend. Compl. 1, ECF No. 36, The Clerk of Court is directed to change the docket sheet to reflect the full and correct names of each defendant as listed on this caption.

[2] This motion for summary judgment is also docketed as a text motion for summary judgment at ECF No. 58.

of March 17, 2021. *Id*. at 22. Defendants resist Krier's cross motion for summary judgment. ECF No. 68.

For the following reasons, the Court finds summary judgment should be granted in favor of Defendants and denied as to Krier.

**I.     SUMMARY OF MATERIAL FACTS**

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (same).

Under the local rules of this district, "[e]ach individual statement of material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix." LR 56(a) (S.D. Iowa). In addition, "[a] response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record." LR 56(b). "The failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *Id*.

Krier has not strictly complied with these local rules. As Krier is proceeding pro se, however, the Court will construe his affidavit as his statement of disputed and undisputed facts with respect to both motions. *See Rinehart v. Weitzell*, 964 F.3d 684, 687 (8th Cir. 2020) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)) (pro se complaint "must be held to 'less stringent standards than formal pleading drafted by lawyers.'"). Even so, the Court will consider undisputed any statements by Defendants to which Krier does not specifically object and are specifically supported by the record.

### A. Generally

Plaintiff Sean Krier is currently incarcerated at the Iowa State Penitentiary (ISP) in Ft. Madison, Iowa. ECF No. 1 at 1. All events giving rise to Krier's claims occurred while he was at ISP. ECF No. 7 at 3. At all relevant times, the defendants were employed at ISP. Derek Gosnell and Weston Weathington were captains, and Bruce Billings, Shane Jobe, Manny Sandoval, and Steve Dill were correctional officers. Defs.' Statement of Undisp. Facts ¶ 2, ECF No. 54-2.

At ISP, a video system exists to record the activities of inmates and serious incidents. *Id*. ¶ 49. The stationary camera does not record sound, but a handheld video camera used to document a particular incident does include audio. *Id*. ¶¶ 49–50. Both Krier and Defendants submit the video recorded of the two incidents giving rise to Krier's claims. *See* Pl.'s Ex. 104, Video File 00002.MTS, 00007.MTS, 00008.MTS, ECF No. 62-1 at 2; Van Wye Aff., Defs.' Exs. A–C, ECF No. 55 at 2.[3] The Court has reviewed the video recordings in full and reviewed all photographs submitted.

Prior to any potential use of force situation—such as an inmate refusing a cell move—a general process is followed. ECF No. 54-2 ¶ 51. If the inmate refuses to leave, a correctional supervisor will approach the inmate, giving him an opportunity to comply. *Id*. ¶ 52. If the inmate

---

[3] Because the critical portions of the video are identical, the Court will reference Krier's video exhibits only.

still refuses, a crisis negotiator team member may discuss the situation with offender. *Id.* ¶ 53. If all previous steps are unsuccessful, a team of security staff is assembled and protective gear for the staff is provided. *Id.* ¶ 54.

In such an event, the staff includes at least one person holding a handheld camera to record the events and a nurse to provide information regarding the inmate involved and to evaluate the inmate after the incident. *Id.* ¶ 55. Staff members involved are identified, and the background of the situation of the inmate in terms of his behavior resulting in the situation and prior attempts to de-escalate are explained. *Id.* ¶ 56

After the initial introduction and explanation, the staff offers the inmate another opportunity to comply with the orders. *Id.* ¶ 57. If the inmate still refuses to cooperate, a chemical agent—oleoresin capsicum (also known as pepper spray)—is sprayed into the cell. *Id.* ¶ 58. The inmate is provided time to comply, and if there is no compliance, the chemical agent may be reapplied. *Id.* ¶ 59.

If the inmate does not comply, staff will enter the inmate's cell, place him on the ground, secure him with handcuffs and leg irons, and remove him from the cell. *Id.* ¶ 60. After the interaction is complete, staff is reassembled to explain what occurred and to allow the nurse to provide updates as to injuries as to staff and/or inmates. *Id.* ¶ 64.

Each of these steps is video recorded.

B. **December 8, 2020**

On December 8, 2020, Krier was issued a disciplinary notice for making threats to a correctional officer. Defs.' Ex. C, ECF No. 55 at APP. 37. ("You are the next C.O. that is going to get f___ed up."). Captain Koechle wrote in the incident report that he went to the cell front to talk with Krier and gave him directives to move. Incident Report, Pl.'s Ex. 107, ECF No. 62-1 at 17.

Krier refused and told Koechle "that this will be the worst cell move that he will ever have to do." *Id*. An ISP negotiator also failed to convince Krier to leave his cell voluntarily. *Id*. An extraction team was then assembled, which included Defendants Weathington, Billings, Jobe, Sandoval, and Dill, and two officers assigned to recording the event on video. *Id*.

At approximately 12:55 p.m., Koechle approached Krier again and gave him three directives to be "cuffed up" or a chemical agent would be sprayed into his cell. *Id*. Krier refused, and Koechle sprayed the agent into the cell. *Id*. The team waited five minutes for the agent to take effect. *Id*.

At approximately 1:05 p.m., Koechle and the rest of the extraction team approached Krier's cell, and Krier was given another order to comply. *Id*. Upon refusal, the extraction team opened and entered Krier's cell. *Id*. Krier's cell floor was covered with an unknown substance making it slick. *Id*. Krier swung a television at the team. *Id*.; *see also* Krier Aff. ¶ 6, ECF No. 62-2. Krier continued to resist, and the team wrestled Krier to the ground and secured him with hand and leg restraints, eventually moving him from the cell. ECF No. 62-1 at 17. *See also* Pl.'s Video File 00002.MTS at 8:05–11:44 (showing cell extraction).

During the cell extraction, Krier suffered multiple injuries. ECF No. 62-1 at 20. Immediately after the extraction, the extraction team nurse observed "moderate swelling to left side of face under left eye, abrasions throughout the patient's face and blood coming from multiple cuts on patient's face. Patient stating the inside of his mouth is cut and bleeding. Evidence of blood coming from inside his mouth." *Id*. Due to his injuries, Krier was sent off-site for evaluation and treatment. *Id*. at 40; *see also* Pl.'s Suppl. Exs., ECF No. 61 (photos of Krier's injuries).

### C. January 8, 2021

On January 8, 2021, a correctional officer noticed Krier had covered his cell windows. Incident Report, Pl.'s Ex. 113, ECF No. 62-1 at 55. Krier refused multiple directives from Defendant Gosnell to remove the coverings. *Id*. A negotiator also failed to convince Krier to take down the coverings. *Id*. A cell extraction team was then assembled. *Id*. Psychologist Mike Eisnicher approved placing Krier in suicide and self-injury prevention (SSIP) status. *Id*.

At approximately 5:28 p.m., Gosnell and the extraction team approached Krier's cell. *Id*. Krier uncovered his windows but refused to leave his cell to go into SSIP status. *Id*. After refusing multiple directives, Gosnell sprayed chemical agent into Krier's cell. *Id*.; *see also* Pl.'s Video File 00008.MTS at 2:17–5:40 (video of event). The team waited in another area to give the chemical agent time to take effect. ECF No. 62-1 at 55.

At 5:33 p.m., Krier relayed to Gosnell that he was ready to move. *Id*. The team returned to Krier's cell, but Krier again refused to leave his cell. *Id*. Gosnell sprayed two more bursts of chemical agent into Krier's cell. *Id*.; *see also* Pl.'s Video File .00008.MTS at 8:51–10:10 (video of event). The team again retreated to give the chemical agent time to take effect. *See* Pl.'s Video File .00008.MTS at 10:10.

At 5:43 p.m., the team returned to Krier's cell, at which time Krier agreed to comply and left his cell without further incident. ECF No. 62-1 at 55. After his shower, Krier was placed in SSIP status. ECF No. 62-2 ¶ 38.

### II. STANDARD OF REVIEW

In viewing the evidence in the light most favorable to the nonmoving party, a court will grant summary judgment if there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party

receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkison v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)).

To avoid an entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To show a fact is genuinely disputed, a party must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The quantum of proof the nonmoving party must produce is not precisely measurable, but it must be enough evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"); *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) ("'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the plaintiff.'") (quoting *Anderson*, 477 U.S. at 252).

"[W]hen opposing parties present two different versions of the facts, 'one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *McReynolds v. Schmidli*, 4 F.4th 648, 652 (8th Cir. 2021))(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III. DISCUSSION

Krier alleges Defendants violated his Eighth Amendment rights with respect to the cell extractions on December 8, 2020, and January 8, 2021. ECF No. 62 at 4–22.

When determining whether excessive force has been used, the "core judicial inquiry" is "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)); *see also Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (citing *Hudson*). In making this decision, the Court must consider "the need for application of force; the relationship between the need for physical force and the amount of force applied; and the extent of the injury the inmate suffered." *Id*. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley v. Albers*, 475 U.S. 312, 322 (1986).

The need to maintain or restore order in prison is always present, not merely when there is an imminent risk of harm. *See Hudson*, 503 U.S. at 6 (balancing "the need 'to maintain or restore discipline' through force against the risk of injury to inmates" is required regardless of "[w]hether the prison disturbance is a riot of a lesser disruption.").

8

A.      December 8, 2020

Krier does not dispute that a cell extraction team had to remove him from his cell on December 8, 2020. ECF No. 62-2 ¶ 3. He also agrees that the team had to "grapple" with him in order to restrain him. *Id*. ¶ 8.

Krier and Defendants dispute about what happened to Krier once he was on the floor of his cell. Krier avers he was compliant with all staff directives and did not actively resist while staff maneuvered around him to secure restraints. *Id*. ¶ 9. He states he posed no risk or threat to anyone. *Id*. ¶ 11. He avers that after he was fully restrained, the officer kneeling on his chest began slamming his right fist down onto Krier's face and head multiple times, resulting in injuries to Krier's face, nose, eye, and head. *Id*. ¶¶ 12–13. He states the five officers then rolled him onto his stomach, and the same officer slammed Krier's head into the concrete four to six times resulting in further injury. *Id*. ¶ 14. Krier argues "[t]here is no other way to explain the type and extensive injuries that are clear in both the video and in photographic pictures taken a few hours after the injuries were sustained." ECF No. 62 at 12.

It is undisputed that Krier sustained injuries to his face during the cell extraction. The video, taken from outside the cell, shows all five officers struggled to restrain Krier. The bodies of the extraction team, however, block Krier's face, and the video does not clearly indicate how Krier's injuries occurred. Regardless, the fact that Krier was injured, even severely injured, does not necessarily demonstrate Defendants maliciously and sadistically used force to cause harm.

Rather, the video reflects Defendants applied only that amount of force required by the circumstances. Krier has introduced the Incident Report from December 8, 2020, which reflects Krier had previously threated a correctional officer. ECF No. 62-1 at 17. When investigating the threat, Krier then told the staff member any attempt to move him would be the "worst cell move

ever." *Id*. Krier covered the floor with a slick substance to make the process more difficult. *Id*. Krier refused to leave his cell even after prison officials introduced a chemical agent into his cell. *Id*. Finally, when the extraction team did enter the cell, Krier swung a television at the officers. *Id*.

The video evidence shows it took five team officers three minutes to subdue Krier, including pushing him to the wall, to the bed, before all of them eventually fell to the floor. Krier actively resisted the cell extraction and the officers struggled to restrain him, even after Krier was on the floor. The video supports Defendants' assertion that the force applied was not for a sadistic purpose or for the purpose of committing harm, but a good faith effort to maintain or restore discipline and compliance, using only that amount of force necessary to subdue an inmate actively resisting authority.[4]

Summary judgment cannot be defeated by merely alleging the existence of some factual dispute. "[T]he requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). Based on the video evidence submitted by Krier, no reasonable jury would believe the correctional officers used force maliciously and sadistically to cause harm but instead, the force applied was a good faith effort to

---

[4] Krier also argues he is entitled to summary judgment because Defendants have not submitted affidavits attesting to their version of events. ECF No. 62 at 9, 13–14. The Federal Rules of Civil Procedure require either party to support its statement of facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Although affidavits are one way to support statements of material facts, the rule allows parties to alternatively rely on disciplinary records or videotaped evidence, as Defendants have done here. Thus, a lack of affidavits by either party does not, in and of itself, defeat the motion, especially as other materials in the record support the statement of facts.

maintain or restore discipline. *See McReynolds*, 4 F.4th at 652. Defendants are entitled to summary judgment on this issue.

### B. January 8, 2021

Krier does not dispute that on January 8, 2021, he blocked his cell windows with paper, preventing prison staff from seeing him. ECF No. 62-2 ¶ 25. After a negotiator also failed to convince Krier to take down the coverings, Defendant Gosnell received permission to move Krier to a suicide and self-injury prevention status (SSIP) cell. Incident Report, Pl.'s Ex 113, ECF No. 62-1 at 55.

Defendant Gosnell and the extraction team approached Krier's cell. ECF No. 62-2 ¶¶ 24–25. Krier uncovered his window, and Gosnell continued to talk with Krier. *Id*. ¶¶ 26–27. Gosnell and the extraction team left, returning several minutes later to inform Krier he was being moved to a SSIP cell. *Id*. ¶¶ 28–29. Krier did not threaten harm to himself or anyone else. *Id*. ¶ 39. Krier did, however, question how and why he was being placed into SSIP. *Id*.

Krier states "without any warnings, directives, or further conversation, [Gosnell] sprayed several seconds' worth of a can of vape into my cell," and then left to give the spray time to take effect. *Id*. ¶ 34. After being sprayed, Krier alerted another officer Krier was ready to "cuff up and get out of the chemicals." *Id*. ¶ 35. Krier avers he lost consciousness at this time. *Id*. ¶ 36.

According to Krier, when Gosnell returned to his cell ten to fifteen minutes later, Gosnell "repeated the same thing without giving [Krier] a chance to cuff up." *Id*. ¶ 37.

When Gosnell and the extraction team returned to Krier's cell a third time, Krier complied and submitted his hands for restraints. *Id*. ¶38. The team allowed Krier to shower and placed him in SSIP status. *Id*.; *see also* ECF No. 62–1 at 55.

Krier argues Gosnell's application of chemical agent on both occasions was unnecessary because it was used without warning, it was used without justification, and the amount of chemical agent was excessive. ECF No. 62 at 18–20.

"'[A] limited application of capstun [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force,'" *Burns v. Eaton*, 752 F.3d 1136, 1139–40 (8th Cir. 2014) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)). Nonetheless, courts have denied summary judgment to defendants on excessive force claims based on the application of pepper spray "where no warning the force would be used, no apparent purpose other than inflicting pain, use of unnecessary 'super-soaker' quantities of the chemical." *Id*. at 1140.

Krier's video evidence does not support his allegations that the spray was applied without warning, was for the purpose of inflicting pain, or used in unnecessary quantities. The undisputed video shows Gosnell spoke with Krier through the door, trying to get him to voluntarily leave his cell. Pl.'s Video File 00008.MTS at 2:16–5:00. During this time, Gosnell was holding the can of spray which was visible to Krier. *Id*. The video contains audio, but due to ambient noise, the conversation between Gosnell and Krier is difficult and sometimes impossible to understand. *Id*. Despite the lack of audio, the video shows Krier was animated when speaking to Gosnell, *id*. at 3:40–4:00, questioning "how and why" he had to move to SSIP. ECF No. 62-2 ¶ 39. After several minutes, Gosnell lifted the chemical spray can, poised to use it, and motioned to the extraction team to open the food tray flap. Pl.'s Video File 00008.MTS at 4:54–5:05. After the flap is opened, Gosnell placed the spray wand into Krier's cell, and dispersed the chemical agent. *Id*. at 5:30–33. Gosnell and the extraction team left the area to allow the chemical agent to work. 5:42–8:53. The video reflects that Krier saw Gosnell with the spray canister, ready to apply the chemical. Krier

also was at the window when Gosnell motioned to the other team members to open the cell flap. The video record clearly reflects Krier had warning of this application of chemical agent.

Gosnell and the team returned several minutes later, expecting Krier to cooperate. ECF No. 62-1 at 55 (returning after CO Hall notified Gosnell that Krier was ready to comply). Krier states he "presumed" he was passed out at this time. ECF No. 62-2 ¶ 37. Even if Krier was, as he states, on his bed with a blanket over him trying to avoid inhaling the chemicals, ECF No. 62-2 ¶ 36, the video shows the team members directing Krier to comply. Pl.'s Video File 00008.MTS at 9: 35–59. Rather than engage in further discussion with Krier, Gosnell approached the cell and sprayed chemical agent into the cell again. *Id*. at 10:00–10:03. Again, Krier's video evidence contradicts Krier's assertion that he had no warning the spray would be used.

Nor does the record support Krier's assertion that no justification existed for using a chemical agent in these circumstances. "[T]he malicious and retaliatory exposure of inmates to an apparently intended harm without a penological purpose" violates the Eighth Amendment. *See Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010). There is no dispute that Krier failed to leave his cell when ordered to do so. Krier states he was only questioning why he was being moved to SSIP. ECF No. 62-2 ¶ 39. Regardless of whether Krier was wrongfully moved to SSIP, "the power of the correctional institution to discipline inmates for failing to obey direct orders is essential to 'a safe and orderly institutional environment.'" *Smith v. State*, 542 N.W.2d 567, 569 (Iowa 1996). Thus, an inmate may not choose to disobey an order even if the order turns out to be incorrect. *Id*.; *cf. United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("a defendant's response to even an invalid arrest or *Terry* stop may constitute independent grounds for arrest."). It is undisputed that Gosnell's use of pepper spray was not done in the complete absence of a penological purpose.

The video evidence also contradicts Krier's allegation regarding the amount and duration of chemical agent used. Krier describes the use of chemical agents as "super-soaker" events. ECF No. 62 at 18–19. The video does not reflect how many bursts of spray were used, but the time signatures on the video indicates both applications were for a period of approximately three seconds. *See* Pl.'s Video File 00008.MTS at 5:30–33; 10:00–10–03. The video evidence blatantly contradicts the assertion that these were "super-soaker" events, and reflects the amount of spray used was appropriate.

Finally, the Court addresses Krier's argument that prison policy "clearly shows that only medical staff and psych services can place an inmate into [SSIP] status." ECF No. 62 at 22. Regardless of whether the prison policy requires placement to be initiated by a psychiatrist or psychologist, a failure to follow prison policy is not a violation of the constitution. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003 ("no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (grievance procedures confer no substantive rights). Further, prison psychologist Mike Eisnicher did originally authorize placement of Krier in SSIP. Incident Report, Pl.'s Ex. 113, ECF No. 62-1 at 55. Moreover, the Eighth Amendment is not violated by placing an inmate in suicide protection status for a short duration, even when unnecessary. *See Lee v. Janosko*, No. 2:18-cv-1297, 2021 U.S. Dist. LEXIS 43330, at *23-24 (W.D. Pa. Mar. 9, 2021) (listing cases of insufficiency of Eighth Amendment claim).

In sum, the video evidence blatantly contradicts Krier's assertions that the spray was applied without warning, valid purpose, or in excessive of what was required. Based on the undisputed video evidence, the Court finds no reasonable jury could conclude the Gosnell used force maliciously and sadistically to cause harm but instead, the force applied was a good faith

effort to maintain or restore discipline. *See McReynolds*, 4 F.4th at 652. Gosnell is entitled to summary judgment on this issue.

## IV. SUMMARY AND RULINGS

For the forgoing reasons,[5]

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on all claims, ECF No. 54, is **GRANTED,** and Sean Krier's motion for summary judgment, ECF Nos. 58, 62, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 19th day of September, 2022.

STEPHANIE M. ROSE, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

---

[5] Because summary judgment is granted on the merits, the Court does not address Defendants' other grounds for summary judgment.